JAMES H. O'DONNELL, Respondent, v K-MART CORPORATION et al., Appellants.

Fourth Department, April 12, 1984

APPEARANCES OF COUNSEL

*Hancock, Estabrook, Ryan, Shove & Hust* (*Robert A. Small* of counsel), for appellants.

*William Francis Lynn* for respondent.

OPINION OF THE COURT

DILLON, P. J.

At the time of the event giving rise to this suit, plaintiff was 23 years of age and patently mentally retarded. On the trial of his causes of action for assault and battery and false imprisonment, there was overwhelming credible evidence, upon which the jury apparently relied, that the conduct of defendant Philip McCarthy, security officer for defendant K-Mart Corporation (K-Mart) in assaulting, striking, seizing, handcuffing and unlawfully detaining plaintiff on the premises of K-Mart, was wholly without justification, and was wanton and malicious. The jury awarded plaintiff $35,000 in compensatory damages against both defendants and $70,000 in punitive damages against defendant K-Mart only, and we affirm.

On the evening of August 17, 1979, plaintiff went into the snack bar of K-Mart's downtown store in the City of Syracuse, ordered Coca Cola and sat down at a table. Seated at a nearby table was a group of four K-Mart employees, including defendant McCarthy and two assistant store managers, Anthony Kozak and Robert Perhacs. Kozak was in charge of the store that evening. According to plaintiff, McCarthy said "look at the guy with the goofy looking glasses" and plaintiff asked that the group not bother him. McCarthy told plaintiff to leave the store but plaintiff refused because he had not finished consuming his drink. After passage of a few minutes, during which it appears that McCarthy teased and taunted plaintiff without objection from either Kozak or Perhacs, McCarthy again asked plaintiff to leave and when plaintiff refused, McCarthy, according to both plaintiff and Perhacs, "punched" plaintiff in the mouth and Perhacs observed blood "pour down O'Donnell's face". At some point during

the altercation, McCarthy asked another employee to "get a camera". Plaintiff was crying "and hysterical" and Kozak joined with McCarthy in putting handcuffs on plaintiff, who was then thrown into a booth where he was detained until the arrival of police. On orders of Police Sergeant Henry Burns, who had come to know plaintiff from having observed him hundreds of times in the downtown area, the handcuffs were removed from plaintiff by McCarthy. Indeed, Burns threatened McCarthy with arrest if plaintiff was not immediately freed. Burns testified that plaintiff was upset and crying as he was taken in the police car by Burns to plaintiff's parents' home where, according to his mother, he continued crying.

The incident was reported to George Halter, the store manager, by Perhacs and McCarthy, if not also by Kozak. Significantly, Halter did not require that written incident reports be filed, and not only did he perpetuate McCarthy's employment but, quoting McCarthy's testimony, Halter said that "I should cover myself".[1] Even though Halter was still in the employ of K-Mart, he was not called as a witness.[2]

■ K-Mart contends that the award of punitive damages against it cannot stand in the absence of an award of punitive damages against McCarthy. We disagree. The necessary predicate for assessing punitive damages against K-Mart is that defendant McCarthy acted maliciously (*Guion v Associated Dry Goods Corp.*, 56 AD2d 798, affd 43 NY2d 876) and, as previously stated, the evidence fully supports a finding that he did. Additionally, in this regard, K-Mart made no objection to the court's charge and thus the charge was the law of the case (*Bichler v Lilly & Co.*, 55 NY2d 571). It freely allowed the jury to make a punitive award against K-Mart without making such an award against McCarthy (see *Nardelli v Stamberg*, 44 NY2d 500).

■ We turn next to the preserved issue of whether there was a sufficient showing of culpability on the part of K-

---

1. To add insult, indignity and separate injury to those already suffered by plaintiff, defendants in their answer pleaded the totally unfounded "shoplifting" defense provided by section 218 of the General Business Law.

2. Defendants called no witnesses, relying instead upon the evidence received on plaintiff's case.

Mart to justify the award of punitive damages. K-Mart interposed a precharge objection that there had been no showing by plaintiff that K-Mart had "condoned", authorized or ratified McCarthy's acts. The argument is repeated on appeal and we reject it, as did the trial court.

The rule for employer liability in this State requires more than a mere showing that the employee was acting within the scope of his employment; there must be some degree of wrongdoing on the employer's part (Prosser, Torts [4th ed], p 12; Restatement, Torts 2d, § 909, Comment *b; Craven v Bloomingdale,* 171 NY 439). Corporations, of course, may act only through human beings and, as expressed in the Restatement (Restatement, Torts 2d, § 909), the corporate employer may be held punitively liable for the act of an employee if the act was authorized, ratified, approved or performed by a managerial agent.

In determining whether an employee is a managerial agent of such rank as to bind the employer, we examine the function of the managerial employee in relation to the nature and operation of the employer's business (see *Gill v Montgomery Ward & Co.,* 284 App Div 36; *Doralee Estates v Cities Serv. Oil Co.,* 569 F2d 716). K-Mart operates an interstate chain of retail stores, each of which functions under the day-to-day direction of a store manager who oversees the conduct of the store's employees. In the case of this retail operation, in the manager's absence, an assistant was in charge. These managerial employees were the principal representatives of the corporation at this store. Their acts can only be viewed as acts of the corporation for which the corporation must be held responsible. The assistant manager, Kozak, at least passively participated in ridiculing plaintiff and affirmatively participated in restraining, handcuffing and detaining plaintiff. His superior, Halter, took no action against him or McCarthy, and Halter's admonition to McCarthy that he should "cover" himself was so reprehensible that the jury could have viewed it as ratifying or approving McCarthy's conduct. In that connection, the jury was properly charged on the permissible inferences which could be drawn from the failure of defendants to produce Halter's testimony.

In all of the circumstances we see here, there was more than an adequate basis for the jury to conclude that the employees in charge of this store had sufficient managerial authority upon which to impose liability against K-Mart for punitive damages for their actions, and we further conclude that the jury was justified in finding authorization or ratification by K-Mart of McCarthy's malicious acts.

■ On the causes of action alleged and proved, plaintiff was entitled to recover damages for his physical injuries, pain and suffering, and also for his mental suffering and injury to his reputation (*Williams v City of Buffalo,* 72 AD2d 952). While there was no proof that his physical injuries were permanent, they were not insubstantial, and the duration of his conscious pain and suffering is not itself all-controlling (see *DeLong v County of Erie,* 89 AD2d 376, affd 60 NY2d 296). The principal element of his damage, however, was mental suffering. He was subjected to gross indignity and public humiliation. While it is difficult, in view of his handicap, to assess the amount and degree of fear instilled in plaintiff, it cannot be gainsaid that he was exposed to a terrifying experience. We do not find the award of compensatory damages to be so high as to shock the conscience of the court (*Beardsley v Wyoming County Community Hosp.,* 79 AD2d 1110; *Juiditta v Bethlehem Steel Corp.,* 75 AD2d 126; *Welty v Brown,* 57 AD2d 1000).

Nor do we find that the award of punitive damages should be reduced. The jury was properly charged that the purpose of a punitive damage award is to punish and deter defendant, and to deter and warn others against committing similar acts (*Walker v Sheldon,* 10 NY2d 401). The propriety of a punitive award is not generally susceptible to precise measurement, but any such award should not be reduced by an appellate court unless it is grossly excessive (*Nardelli v Stamberg,* 44 NY2d 500, *supra*). The deterrent effect of a punitive damage award is to some extent dependent upon the wealth of the defendant (*Varriale v Saratoga Harness Racing,* 76 AD2d 991; *Rupert v Sellers,* 48 AD2d 265), and no claim is made here that K-Mart is less than a substantial business entity.

Accordingly, the judgment and order denying defendants' motions to set aside the verdicts should be affirmed.

CALLAHAN, DOERR, GREEN and MOULE, JJ., concur.

Order and judgment unanimously affirmed, with costs.