**Jason B. GARDNER,**
Plaintiff–Appellee–Cross–Appellant,

v.

**FEDERATED DEPARTMENT STORES, INC.,**
Defendant–Appellant–Cross–Appellee.

Nos. 1025, 1379, Dockets
89–9172, 90–7036.

United States Court of Appeals,
Second Circuit.

Argued April 16, 1990.

Decided July 10, 1990.

A. Paul Goldblum, Brooklyn, N.Y. (Goldblum & DiCicco, Brooklyn, N.Y., Semel, Boeckmann, Diamond, Schepp & Yuhas, New York City, of counsel), for defendant-appellant-cross-appellee.

Robert L. Herbst, New York City, for plaintiff-appellee-cross-appellant.

Before PRATT and MINER, Circuit Judges, and RE, Judge.*

MINER, Circuit Judge:

Defendant-appellant/cross-appellee Federated Department Stores, Inc. ("Federated") appeals from a judgment entered on December 4, 1989, after a jury trial in the United States District Court for the Southern District of New York (Knapp, J.). The jury found Federated liable to plaintiff-appellee/cross-appellant Jason B. Gardner for injuries arising from false imprisonment and battery by Federated's security personnel and awarded compensatory damages of $150,000 for deprivation of liberty and $150,000 for past pain and suffering. The jury also assessed punitive damages of $1,500,000 against Federated. Gardner cross-appeals from so much of the judgment as remitted all but $10,000 of the $500,000 in compensatory damages separately awarded by the jury for future pain and suffering.

---

* Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

On appeal, Federated contends that the punitive damages award cannot be sustained because there was no evidence that the misconduct was perpetrated, authorized or ratified by a "superior officer" of the defendant corporation. It also contends that the compensatory damages awarded for deprivation of liberty and past pain and suffering are excessive. On cross-appeal, Gardner argues that Judge Knapp's order of remittitur was improper.

We find that the evidence is insufficient to support a finding that the misconduct was committed, authorized or ratified by an individual vested with managerial authority and accordingly reverse that portion of the judgment awarding plaintiff punitive damages. We also find that $150,000 for the deprivation of liberty involved in the instant case is excessive and remand for a new trial on that issue, subject to acceptance of a remittitur. We affirm the damages award of $150,000 for past pain and suffering. As to the cross-appeal, Gardner's acceptance of the remittitur precludes an appeal from that portion of the judgment, and we therefore dismiss the cross-appeal.

## BACKGROUND

Jason B. Gardner was a free-lance promotional model who promoted and sold fragrances at Bloomingdale's, a chain of department stores owned by Federated. On April 16, 1984, Gardner went to Bloomingdale's in Manhattan to return a gray jacket. After obtaining a return slip from John Hayden, an acquaintance who worked in the men's department, Gardner proceeded to the service desk. He told the supervisor at the return desk that he did not have a receipt for the gray jacket but had one for a black jacket that cost the same amount and also had been purchased from Bloomingdale's. The supervisor agreed to accept a return of the gray jacket.

At approximately 8:30 p.m. on April 19 Gardner, wearing the black jacket, went to Bloomingdale's to meet a friend, Arielle Stern Haim. Haim, who also worked as a promotional model, gave Gardner some free samples and agreed to meet him for dinner at the conclusion of her shift. While waiting outside Bloomingdale's for Haim, Gardner was approached by James Boyce, a member of Bloomingdale's security unit that was responsible for corporate internal investigations. Boyce and a second individual detained and handcuffed Gardner and forced him into the store. He was dragged to the store's security department and placed in "what looked like a little jail cell." The black jacket, the contents of Gardner's pockets and a tote bag containing the samples were searched. Security personnel called Gardner a "blond faggot" and told him, "we're going to get you."

Gardner next was escorted to an office occupied by Boyce. Boyce directed him to sign a form containing an admission to the theft of Bloomingdale's merchandise, but Gardner refused and was taken to a different cell. He later was returned to the same office and again told to sign the form. This time, after Gardner refused to sign, Boyce punched him in the left ear several times and told him to "[s]ign it." Despite the beating, Gardner did not acquiesce.

At 10:30 p.m., Gardner was released to police custody and transported to Central Booking. He was fingerprinted, photographed and then placed in a jail cell with other prisoners, several of whom taunted him. Haim posted bail for Gardner at 4:30 a.m. on April 20. She noticed that his left ear was inflamed, that his right wrist had been cut by the handcuffs, and that his face was bruised. Gardner went to a hospital that night, complaining of an ear ache and hearing troubles, and was issued a prescription for ear drops.

Gardner appeared in court four times before he was arraigned. In July 1984, the charges were dismissed. After the incident, he worked at several department stores until moving to California. He commenced this diversity suit against Federated, seeking damages under New York law for assault, battery, false imprisonment and negligence, in April 1985.

At trial, Gardner testified that since the incident he has had hearing difficulties,

frequent lockjaw, an inability to chew certain foods and occasional inflammation of his left ear after showering and swimming. Additionally, he is troubled by nightmares, depression and paranoia.

The report of Dr. Gerald Appelle, D.M.D., Federated's dental expert, who examined Gardner in 1988, was admitted in evidence. Appellee found that Gardner's jaw muscle was tender and that he was unable to open his mouth completely. He diagnosed Gardner's condition as temporomandibular joint syndrome ("TMJ"), but he could not predict if the condition was permanent.

Gardner's psychiatric expert, Dr. Peter Schiffman, concluded that Gardner suffered from "an atypical anxiety disorder" and that as a result of the incident Gardner "enjoyed things a lot less." Dr. Schiffman was uncertain about the permanency of Gardner's symptoms, but he opined that without treatment they would remain and that with treatment they "may get somewhat better or they may not." Dr. Morton Marks, Federated's psychiatric expert, also found that Gardner suffered from "an atypical anxiety disorder," but he believed that the incident had sparked a preexisting condition. While Dr. Marks confirmed that the incident caused a personality change, he concluded that "normal occupational activities" eventually could be resumed.

After both sides rested, Federated requested an adjournment until the next day to present a last-minute witness, John Hayden. Finding that Federated had not exercised due diligence in locating Hayden and that his testimony would not be probative of the reasonableness of Gardner's detention, both the adjournment and a later offer of proof were denied. Judge Knapp then granted Gardner's motion for a directed verdict on the false imprisonment claim. He also instructed the jury to consider damages for deprivation of liberty and pain and suffering separately. The jury rendered a verdict in favor of Gardner on the battery claim and awarded $150,000 for deprivation of liberty, $150,000 for past pain and suffering, $500,000 for future pain and suffering and $1.5 million in punitive damages.

Federated moved to set aside or reduce the verdict as contrary to the evidence. The motion was granted only to the extent that the court directed Gardner to remit $490,000 of the future pain and suffering award or accept a new trial on that aspect of the damages award. *Gardner v. Federated Dep't Stores, Inc.,* 717 F.Supp. 136, 141 (S.D.N.Y.1989). Gardner accepted the remittitur, and judgment was entered in the amount of $1,910,450.80, including post-judgment interest.

## DISCUSSION

### 1. Punitive Damages

Federated contends that the punitive damages award cannot be sustained because there was insufficient evidence to establish vicarious liability for the wrongdoing of its employees. The parties do not dispute that New York law governs the propriety of the punitive damages award. *See Doralee Estates, Inc. v. Cities Serv. Oil Co.,* 569 F.2d 716, 721 (2d Cir.1977).

Under New York law, punitive damages may be imposed on an employer for the intentional wrongdoing of its employees if there is sufficient proof that a "superior officer" or an individual employed in a managerial capacity participated in, authorized, consented to or ratified the misconduct. *Loughry v. Lincoln First Bank, N.A.,* 67 N.Y.2d 369, 378, 494 N.E.2d 70, 74–75, 502 N.Y.S.2d 965, 969–70 (1986). In determining whether an employee is considered a superior officer, we need not confine our search to "the executive suite or topmost reaches of corporate government." *Id.* at 380, 494 N.E.2d at 76, 502 N.Y.S.2d at 971; *Doralee Estates,* 569 F.2d at 722. Our concern is that the individual's responsibility is sufficiently important that "his participation in the wrongdoing renders the employer blameworthy, and arouses the 'institutional conscience' for corrective action." *Loughry,* 67 N.Y.2d at 380–81, 494 N.E.2d at 76, 502 N.Y.S.2d at 971.

Rejecting Federated's motion to set aside the punitive damages award, the district

court concluded that Boyce was a "high-ranking manager," that he "tolerated and ... encouraged by example his subordinates' abusive behavior" and that Federated's condonation of misconduct by its security personnel was evident from the absence of a definite policy for investigating complaints. *Gardner*, 717 F.Supp. at 141–42. "This Court, in reviewing the denial of motions for judgment notwithstanding the verdict, 'must determine whether the evidence, viewed in the light most favorable to [Gardner], was sufficient to allow a reasonable juror to arrive at the verdict rendered.'" *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir.1990) (quoting *Schwimmer v. Sony Corp. of Am.*, 677 F.2d 946, 952 (2d Cir.), *cert. denied*, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982)). After careful review, we find no basis for the punitive damages award.

Gardner's emphasis on testimony describing Boyce as an "executive in the corporate internal investigation unit" and a "corporate investigations supervisor" is unavailing. Mere job titles cannot camouflage the true nature of Boyce's authority. *Loughry*, 67 N.Y.2d at 381, 494 N.E.2d at 76, 502 N.Y.S.2d at 971. He held an entry-level job in the corporate investigation unit. While identified as a supervisor, Boyce actually was one of two persons holding supervisory positions in a security unit consisting of four or five "corporate investigators." Each member of the unit was charged with the same task, investigating employees at Bloomingdale's stores nationwide. Boyce reported to Philip Kerns, who apparently held a higher supervisory position in the unit. Kerns reported to Bloomingdale's Corporate Security Director, John Harden.

While Boyce had the authority to commence employee audits at the various Bloomingdale's stores, vesting an employee with limited decision-making responsibility does not alone demonstrate that the employee is a representative of the institutional conscience. *Id.* at 380, 494 N.E.2d at 76, 502 N.Y.S.2d at 971. The evidence clearly reveals that Boyce was not in charge of corporate security but merely was an intermediate functionary and did not operate at a policy-making level. The record lacks evidence that Boyce held "a high level of general managerial authority in relation to the nature and operation of [Federated's] business." *Id.*

There also is no evidence to support Gardner's argument that managerial authority had been delegated to Boyce on the night of the incident. *See Neal v. C.F.M. Enters.*, 133 A.D.2d 941, 942, 520 N.Y.S.2d 656, 658 (3d Dep't 1987), *appeal denied*, 70 N.Y.2d 615, 519 N.E.2d 623, 524 N.Y.S.2d 677 (1988); *O'Donnell v. K–Mart Corp.*, 100 A.D.2d 488, 491, 474 N.Y.S.2d 344, 347 (4th Dep't 1984). Nor is there any proof to support Gardner's bald assertion that the brutality practiced in the case at bar was in pursuance of a business policy endorsed by Federated. *See Loughry*, 67 N.Y.2d at 378, 494 N.E.2d at 74, 502 N.Y.S.2d at 970.

Gardner underscores the district court's conclusion that the jury could infer that misconduct by security personnel was tolerated because "Federated[ ] [had a] practice of never investigating complaints." *Gardner*, 717 F.Supp. at 142. The parties vigorously dispute whether Federated had a procedure to investigate complaints lodged against its security personnel. However, we are not inclined to resolve this factual issue, because no evidence was adduced to establish that management was cognizant of previous complaints and failed either to investigate them or take corrective action. Gardner did not allege that even this incident was brought to Federated's attention prior to commencement of the lawsuit. Without proof that management was cognizant of wrongdoing and failed to implement curative procedures, Gardner's contention that Federated tolerated wrongdoing by its security personnel is without factual foundation. *See Brink's Inc. v. City of New York*, 717 F.2d 700, 705–06 (2d Cir.1983); *Doralee Estates*, 569 F.2d at 722.

In light of the foregoing, we reverse the award of punitive damages.

### 2. Compensatory Damages

The jury awarded Gardner compensatory damages in the amount of $150,000 for

deprivation of liberty and $150,000 for his pain and suffering up until the date of trial. Federated contends that both awards are excessive.

■ "We are constrained to give due deference to the fact-finding role of the jury" when reviewing a claim of excessive damages. *Raucci*, 902 F.2d at 1058. "The district court's refusal to set aside or reduce a jury award will be overturned only for abuse of discretion." *Id.* Nevertheless, we may not sustain the judgment "where the damages awarded are so excessive 'as to shock the judicial conscience.'" *Id.* (quoting *Martell v. Boardwalk Enters.*, 748 F.2d 740, 750 (2d Cir.1984) (citation omitted)).[1] As a court sitting in diversity, our determination as to whether an award of damages is excessive is accomplished by comparing the challenged award with jury awards "condoned by the courts of the state whose substantive law governs the rights of the parties, in this case New York State." *Martell*, 748 F.2d at 750; *see Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990).

■ In accordance with Judge Knapp's instruction, the jury rendered separate awards for deprivation of liberty and pain and suffering. Thus, the damages for deprivation of liberty redress the denial of free movement and the violation done to Gardner's dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident. The $150,000 awarded for deprivation of liberty exceeds awards sanctioned in similar New York cases. *E.g., Malte v. New York*, 125 A.D.2d 958, 510 N.Y.S.2d 353 (4th Dep't 1986) (mem.) ($125,000 reduced to $35,000 for teacher falsely arrested at school, strip searched, incarcerated 10 hours and characterized in news reports as child beater), *appeal denied*, 69 N.Y.2d 607, 507 N.E.2d 320, 514 N.Y.S.2d 1024 (1987); *Orndorff v. De Nooyer Chevrolet, Inc.*, 117 A.D.2d 365, 503 N.Y.S.2d 444 (3d Dep't 1986) (affirming

$50,000 for false arrest where plaintiff held in custody for 12 hours and ridiculed in newspaper); *Palmquist v. City of Albany*, 112 A.D.2d 624, 492 N.Y.S.2d 487 (3d Dep't 1985) (affirming $18,500 for detention of 3 hours and physical injuries); *Woodard v. City of Albany*, 81 A.D.2d 947, 439 N.Y. S.2d 701 (3d Dep't 1981) (mem.) ($16,000 reduced to $7,500 for 5 hours in jail); *Klein v. City of New York*, No. 48884/81 (App. Term, 1st Dep't Mar. 9, 1982) ($30,000 for false arrest reduced to $15,000 for custody of 16 hours).

The guidance provided by these cases confirms our impression that the evidence cannot justify the magnitude of the award for deprivation of liberty. Accordingly, we order a new trial on the issue of these damages, unless Gardner agrees to remit the amount in excess of $50,000.

■ Noting that Gardner's treatment for his physical injuries was limited and that he did not seek any psychological treatment, Federated contends that the damages award of $150,000 for the pain and suffering experienced up until trial is excessive. The evidence adduced at trial established that Gardner suffered from ear aches, lockjaw and TMJ. Both psychiatric experts agreed that Gardner was suffering from an atypical anxiety disorder. Federated's expert further noted that the incident induced a personality change; and Gardner's expert noted that the incident caused Gardner to "enjoy things a lot less." Sums of the magnitude of that awarded here for pain and suffering have been sustained, even absent a showing that the injuries were chronic or debilitating. *See Ismail*, 899 F.2d at 187 (citing New York cases).

In light of the foregoing, we find that the award for past pain and suffering was not excessive.

3. Denial of the Continuance

■ Federated contends that the district court improperly denied its request for

---

1. In 1986, New York amended the law governing review of damages awards to provide that an award is excessive "if it deviates materially from what would be reasonable compensation." N.Y.Civ.Prac.L. & R. 5501(c) (McKinney Supp. 1990). Federated argues that we should apply this new standard, while Gardner contends that it was waived when not raised in Federated's motion to set aside the verdict. Since we conclude that in the instant case the outcome would be the same under section 5501(c), we need not express an opinion as to which standard applies.

a continuance to present the testimony of John Hayden. A trial judge has discretion to refuse to allow a party to call last-minute witnesses. *Powell v. Gardner*, 891 F.2d 1039, 1046 (2d Cir.1989); *see also Air et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 495 (2d Cir.1985). Hayden allegedly would have testified that Gardner approached him first concerning return of the merchandise and that he was unaware that Gardner wanted to exchange the gray jacket rather than the black one. Since the supervisor at the return desk testified that she knew Gardner had the wrong receipt, Hayden's testimony would have added little to Federated's defense that the detention was lawful. *See* N.Y.Gen.Bus.Law § 218 (McKinney 1988). The probative value of the testimony was speculative; thus, Judge Knapp did not abuse his discretion in refusing to grant a continuance. *Powell*, 891 F.2d at 1046.

### 4. Acceptance of Remittitur

■ In his cross-appeal Gardner argues that Judge Knapp's remittitur of the future pain and suffering award was improper. He contends in this connection that the district court disregarded the jury's findings and improvidently faulted him for not seeking medical treatment immediately after the incident.

One who has agreed to accept a remittitur ordinarily is precluded from challenging it on appeal. *See, e.g., Fiacco v. City of Rensselaer*, 783 F.2d 319, 333 (2d Cir. 1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). Gardner nonetheless asserts that an exception to this rule was fashioned in *Akermanis v. Sea–Land Serv., Inc.*, 688 F.2d 898, 903 (2d Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983), and that the exception applies to his situation. In *Akermanis*, we held that the trial judge improperly conditioned the remittitur on an alteration of the allocation of comparative fault between the plaintiff and the defendant. The added condition was considered to have undermined the "conditional aspect of the new trial order" customarily implicated in an order of remittitur. *Id.* at 903. *Akermanis* is inapposite here. Gardner merely seeks to mount an evidentiary challenge to the district court's reduction of damages, a reduction that he accepted in lieu of a new trial. Under such circumstances, his appellate opportunity is foreclosed.

Because Gardner is precluded from challenging the remittitur, we find it unnecessary to address Federated's contention that the cross-appeal was not timely filed. Accordingly, we dismiss Gardner's cross appeal.

### CONCLUSION

The award of punitive damages is reversed. We vacate and remand for a new trial on the issue of damages for deprivation of liberty subject to acceptance of a remittitur of the amount in excess of $50,-000. We affirm the damages award for past pain and suffering and dismiss the cross-appeal. No costs are awarded on this appeal.