78 F.3d 787
 Sherry BENDER, Plaintiff-Appellee,
v.
CITY OF NEW YORK; New York City Police Officers John
Timmes; Sonia I. Corpes, Shield # 28035; Daniel
O'Sullivan, Shield # 15904; and Gerald
Heinz, Defendants-Appellants.
 No. 539, Docket 95-7402.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 31, 1995.
Decided March 1, 1996.
 
 Jane S. Earle, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, Pamela Seider Dolgow, New York City on the brief), for defendants-appellants.
 Richard D. Emery, New York City (Andrew G. Celli, Lankenau, Kovner & Kurtz, New York City on the brief), for plaintiff-appellee.
 Before: NEWMAN, Chief Judge, and ALTIMARI, Circuit Judge.*
 JON O. NEWMAN, Chief Judge:
 
 
 1
 This appeal in a police misconduct case once again illustrates the need for care in framing issues for a jury in order to avoid duplicative compensatory awards where constitutional tort claims involve different causes of action and different defendants. Defendants-appellants, the City of New York and four current and former police officers, appeal from the March 31, 1995, judgment of the District Court for the Southern District of New York (Miriam Goldman Cedarbaum, Judge), after a jury trial, awarding plaintiff-appellee Sherry Bender $300,700 for false arrest, malicious prosecution, battery, and intentional infliction of emotional distress. Appellants challenge primarily the component of the $300,700 award imposing $150,000 of damages against one of the individual defendants for intentional infliction of emotional distress. Though not accepting the precise contentions advanced by appellants, we conclude that the aggregate award may not stand and therefore reverse and remand for a new trial unless Bender accepts a remittitur of $150,000.
 
 Facts
 
 2
 On June 15, 1991, Bender was riding her bicycle in Manhattan near Tompkins Square Park, where a demonstration was taking place to protest the closing of the park. Large numbers of police were present. At some point Bender had an altercation with the police, including three of the defendant police officers, Lt. Timmes, Lt. Heinz, and Officer O'Sullivan. The circumstances were disputed at trial. Appellants claimed that Bender was weaving her bicycle in and out of police barricades. Bender claimed that Lt. Timmes shoved her for no reason and told her to move on, and that Lt. Heinz and Officer O'Sullivan then joined Lt. Timmes and forcibly arrested her for disorderly conduct and resisting arrest. This episode led to Bender's claims for false arrest and malicious prosecution on the disorderly conduct charge, and appears to have contributed to her claim for intentional infliction of emotional distress.
 
 
 3
 The events occurring immediately thereafter led to Bender's claims for battery, false arrest, and malicious prosecution on an assault charge, and formed the core of her emotional distress claim. Though these later circumstances were also disputed, the jury could have found the following. Bender was handcuffed and placed in a police van. Inside the van were Officer Sonia Corpes and another arrestee. Bender refused to remain seated, prompting Officer Corpes to try to force her to sit down. Corpes and Bender screamed and swore at each other and Corpes, using the back of her arm, hit Bender in the mouth. When Corpes's arm made contact with Bender's teeth, Corpes, claiming to have been bitten, smiled and said, "Now you're going through the system, you fucking bitch." Corpes testified that "going through the system" meant that Bender would be held in jail for at least 24 hours, rather than released in an hour or two with a Desk Appearance Ticket.
 
 
 4
 At the precinct, Corpes asked Bender whether she is "male, female, or dog." Bender at some point pleaded with Corpes not to put her in jail. Officer Corpes responded, "I can't, my sergeant is making me do this." Bender was then charged with disorderly conduct and resisting arrest for the Tompkins Square Park episode and felony assault for biting Officer Corpes. Bender was taken to a detention facility, held there for nearly 24 hours, and then released after a total of 29 1/2 hours. Six months later, all charges against her were dropped.
 
 
 5
 Bender's federal court lawsuit alleged section 1983 and pendent state law claims against the four police officers and New York City. She alleged claims of (1) false arrest for both the disorderly conduct and assault charges, (2) malicious prosecution for both disorderly conduct and assault, (3) battery, and (4) intentional infliction of emotional distress. The jury's verdict form sought the jury's findings of liability against some or all of the four officers for all four categories of state law torts. The form made no discrete inquiry concerning the section 1983 claims since Judge Cedarbaum had instructed the jury, without objection, that the elements of the section 1983 claims were identical to the elements of the state law torts of false arrest and battery. Nor did the form ask questions regarding the liability of the City since the jury was told that there was no dispute that the officers were acting in the scope of their employment and, as a result, if any officer was found liable, the judgment would be entered against both the officer and the City. Especially significant to this appeal, the form did not provide the jurors with a means of indicating in what respects their compensatory awards against any of the individual officers for any of the four categories of torts were to be considered separate or duplicative.
 
 
 6
 The jurors returned a mixed verdict as follows:
 
 
 7
 (1) false arrest--finding Lt. Timmes liable for falsely arresting Bender for disorderly conduct, with damages of $700, and finding Officer Corpes liable for falsely arresting Bender for assault, with damages of $10,000;
 
 
 8
 (2) malicious prosecution--finding Lt. Timmes and Officer Corpes liable for malicious prosecution, with damages of $50,000 against Timmes and $80,000 against Corpes;
 
 
 9
 (3) battery--finding Lt. Timmes, Lt. Heinz, and Officer O'Sullivan not liable, and finding Officer Corpes liable, with damages of $10,000;
 
 
 10
 (4) intentional infliction of emotional distress--finding Lt. Timmes, Lt. Heinz, and Officer O'Sullivan not liable, and finding Officer Corpes liable, with damages of $150,000.
 
 
 11
 No punitive damages were awarded.
 
 
 12
 The judgment awarded Bender $700 against Timmes, Heinz, O'Sullivan, and the City, jointly and severally; $250,000 against Corpes and the City, jointly and severally; and $50,000 against Timmes and the City, jointly and severally, for an aggregate amount of $300,700.[1]
 
 
 13
 The District Court denied the City's Rule 50(a) motion for judgment as a matter of law and its Rule 59(a) motion for a new trial. Judge Cedarbaum acknowledged that New York courts have a very high standard for intentional infliction of emotional distress claims, stating that New York requires that "the conduct must be so outrageous and extreme as to go beyond all possible [b]ounds of decency." The Judge then stated that imprisonment without probable cause and for the sole purpose of confining a citizen to jail for 24 hours can rise to the level of intentional infliction of emotional distress. Judge Cedarbaum sustained the jury's verdict on that basis. With respect to the City's argument that a separate tort for infliction of emotional distress could not be sustained where the underlying conduct overlapped with other torts, the Judge noted certain dicta from the New York Court of Appeals that "questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability...." Fischer v. Maloney, 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978). Nevertheless, Judge Cedarbaum concluded that, even if New York law does not permit entirely overlapping torts, the intentional infliction of emotional distress claim in this case contained elements that did not entirely overlap the claims of false arrest and malicious prosecution. In particular she noted that, if the jury believed that Officer Corpes told Bender with sadistic intent that Bender would have to go through "the system" and that such a statement signified a threat of something worse than being charged and released, "the jury could have believed that there were additional elements of intentional infliction of emotional distress which do not necessarily inhere in a charge of either malicious prosecution or false imprisonment, or false arrest."
 
 Discussion
 
 14
 I. Intentional Infliction of Emotional Distress
 
 
 15
 The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. See Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993). Appellants challenge the emotional distress award against Officer Corpes on two grounds. First, they contend that her conduct, accepting the plaintiff's evidence, as the jury was entitled to do, does not constitute the "extreme and outrageous conduct" New York requires for this tort. Second, they contend that New York would not allow recovery for an emotional distress tort under circumstances where the alleged conduct is largely if not entirely compensable under other tort causes of action.
 
 
 16
 The parties agree that New York sets a high threshold for conduct that is "extreme and outrageous" enough to constitute intentional infliction of emotional distress. See Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983) (" 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]' ") (quoting Restatement of Torts, Second, § 46 cmt. d (1965)). Appellants note that the New York Court of Appeals has not yet sustained such a claim. See Howell, 81 N.Y.2d at 122, 596 N.Y.S.2d at 353, 612 N.E.2d at 702. Two recent decisions of the Appellate Division rejecting emotional distress claims have taken a restrictive approach to this state law tort. See Herlihy v. Metropolitan Museum of Art, 214 A.D.2d 250, 262-63, 633 N.Y.S.2d 106, 113-14 (1st Dep't 1995) (rejecting emotional distress claim based on allegedly false accusation of making anti-Semitic slurs); Andrews v. Bruk, --- A.D.2d ----, 631 N.Y.S.2d 771 (2d Dep't 1995) (rejecting emotional distress claim based on use of hospital documents to allege extramarital affair).
 
 
 17
 However, other lower state courts have sustained some emotional distress claims, against a motion to dismiss, that appear to allege conduct that is somewhat less than "utterly intolerable in a civilized society." See Flatley v. Hartmann, 138 A.D.2d 345, 346, 525 N.Y.S.2d 637, 638 (2d Dep't 1988) ("hang-up" telephone calls); Halio v. Lurie, 15 A.D.2d 62, 67, 222 N.Y.S.2d 759, 764 (2d Dep't 1961) (taunting letter from former boyfriend, boasting of marriage); Flamm v. Van Nierop, 56 Misc.2d 1059, 1061, 291 N.Y.S.2d 189, 191 (Westchester Cty.Sup.Ct.1968) (harassing plaintiff by driving too closely and making threatening looks). Somewhat pertinent to our case, an allegation that a female police officer made a false complaint against a plaintiff was held by the Appellate Division to state a claim for infliction of emotional distress, sufficient to withstand summary judgment, at least where the plaintiff and her husband were "in the midst of a matrimonial action in which [the police officer] was named." Levine v. Gurney, 149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (2d Dep't 1989).
 
 
 18
 Appellants challenge the legal sufficiency of Bender's factual presentation by characterizing the episode as one in which Bender bit Officer Corpes and the Officer properly responded by making a complaint of assaulting a police officer. However, the evidence was not so clear-cut. All that was undisputed is that Officer Corpes's arm and Bender's teeth came into contact with each other as the police officer was endeavoring to force Bender, then hand-cuffed, to sit down in the police van. Officer Corpes testified that Bender bit her. Bender testified that Officer Corpes struck her in the mouth, and Bender explicitly said at one point, "I didn't bite her, I opened my mouth and my teeth marks were exactly where she placed her upper arm." Admittedly, her testimony was not entirely consistent since she had earlier said that as Officer Corpes "went ... to hit me in the face ... I instinctively opened my mouth. Then she leaned, and I bit her."
 
 
 19
 The conflicting testimony created fact issues for the jury as to whether Officer Corpes's arm was injured by the act of striking Bender in the mouth and whether Officer Corpes falsely claimed to have been bitten and wrongfully initiated an assault charge against Bender. If the jury resolved both these issues in favor of Bender, as it apparently did, then New York might well regard the officer's actions as sufficiently outrageous to satisfy the conduct element of the emotional distress tort.
 
 
 20
 Even so, there would remain appellants' further point that New York would not sustain Bender's emotional distress claim because of the substantial overlap of that tort, under the circumstances of this case, with the traditional torts of false arrest, battery, and malicious prosecution. In Fischer v. Maloney, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978), the New York Court of Appeals stated, "[I]t may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability, [such as] malicious prosecution and abuse of process." Id. at 557-58, 402 N.Y.S.2d at 993, 373 N.E.2d at 1217. Appellants contend that all of the conduct that Bender alleges constitutes intentional infliction of emotional distress falls "well within the ambit" of the torts of false arrest, battery, and malicious prosecution. See Herlihy, 214 A.D.2d at 263, 633 N.Y.S.2d at 114 (rejecting emotional distress claim because allegedly tortious conduct was within ambit of defamation claim); Butler v. Delaware Otsego Corp., 203 A.D.2d 783, 784-85, 610 N.Y.S.2d 664, 665-66 (3d Dep't 1994) (same); Sweeney v. Prisoners' Legal Services, 146 A.D.2d 1, 7, 538 N.Y.S.2d 370, 374 (3d Dep't 1989) (same). Bender responds that the statement in Fischer is dictum, and that lower state courts have sustained, against motions to dismiss, emotional distress claims for conduct within the ambit of other torts. See, e.g., Levine, 149 A.D.2d at 473, 539 N.Y.S.2d at 968 (claims for emotional distress and malicious prosecution); Murphy v. Murphy, 109 A.D.2d 965, 966, 486 N.Y.S.2d 457, 459 (3d Dep't 1985) (emotional distress claim encompassing conduct constituting assault and battery).
 
 
 21
 Judge Cedarbaum explicitly reckoned with this contention of the appellants, concluding that the emotional distress claim did not "entirely overlap" with the other torts. She reasoned that the initiation of a false charge, with sadistic intent and for the purpose of subjecting Bender to the prosecution system, could be found to involve additional elements not necessarily comprehended by the torts of false arrest or malicious prosecution.
 
 
 22
 We are uncertain whether the state courts would entertain an emotional distress claim in addition to the other torts alleged in this case. Levine is Bender's most persuasive authority, but the unusual personal involvement of the police officer with the victim's husband makes that case a doubtful authority for inferring any generalized rule. In any event, for reasons to be discussed, we deem it unnecessary to resolve definitively the state law issue presented, or to accept the appellants' suggestion to certify the state law issue to the New York Court of Appeals.
 
 II. Size of the Compensatory Awards
 
 23
 Pervading this entire appeal are substantial issues concerning the size of the aggregate jury award and the distinct risk that the aggregate award was inflated by significant duplication among the separate awards for different torts and against different defendants.
 
 
 24
 The police misconduct in this case, stripped of Bender's emotional characterizations, resulted in the following injuries: a physical blow to the mouth that resulted in no bruise or cut, much less any permanent injury; 24 hours' confinement in a cell under extremely unpleasant conditions; an additional five hours of custody prior to release at arraignment; the pendency of disorderly conduct and assault charges for six months, prior to their dismissal; and emotional distress to the plaintiff that was manifested by nightmares and occasional loss of sleep over a period lasting a year and a half. Though Bender's distress was sufficient to be diagnosed by her expert witness as post-traumatic distress syndrome, the basic facts are that she was in custody for one day, the experience caused her some emotional distress, and she suffered no permanent disability. We believe an aggregate award of $300,700 for these injuries is excessive.
 
 
 25
 Our examination of other police misconduct cases is instructive. In King v. Macri, 993 F.2d 294 (2d Cir.1993), a jury awarded $75,000 in compensatory damages to a victim of malicious prosecution who had been beaten while in custody and confined for two months. Id. at 296-97. In Gentile v. County of Suffolk, 926 F.2d 142 (2d Cir.1991), we sustained an aggregate jury award of $150,000 for police misconduct that resulted in several days of wrongful confinement and the pendency of criminal charges for six years. Id. at 144-45. In Gardner v. Federated Department Stores, Inc., 907 F.2d 1348 (2d Cir.1990), we reduced to $50,000 a compensatory award of $150,000 for loss of liberty that lasted several hours of one night.[2] Id. at 1350, 1353. Gardner noted several New York cases that had upheld smaller awards for wrongful detentions lasting no more than one day. Id. at 1353 (citing, e.g., Malte v. State, 125 A.D.2d 958, 960, 510 N.Y.S.2d 353, 353-54 (4th Dep't 1986) ($125,000 award reduced to $35,000 for ten hours of detention)); Orndorff v. De Nooyer Chevrolet, Inc., 117 A.D.2d 365, 368, 503 N.Y.S.2d 444, 447 (3d Dep't 1986) (affirming $50,000 award for 12 hours of detention).
 
 
 26
 Where higher awards have been upheld, significant aggravating circumstances have been present. See Vitale v. Hagan, 132 A.D.2d 468, 468, 517 N.Y.S.2d 725, 726 (1st Dep't 1987) ($750,000 award, unchallenged on appeal, for malicious prosecution initiated by police officer in reaction to involvement in traffic accident with motorist), aff'd as modified, 71 N.Y.2d 955, 528 N.Y.S.2d 823, 524 N.E.2d 144 (1988); see also Hughes v. Patrolmen's Benevolent Ass'n of the City of New York, 850 F.2d 876, 884 (2d Cir.) ($575,000 for protracted course of harassment by police officers against fellow officer), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).
 
 
 27
 In the pending case, the aggregate award is excessive, and appears highly likely to have resulted from duplication of compensation, an issue to which we now turn.
 
 III. Risk of Duplicative Compensatory Awards
 
 28
 A basic principle of compensatory damages is that an injury can be compensated only once. If two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained. See Gentile, 926 F.2d at 153; Wickham Contracting Co. v. Board of Education, 715 F.2d 21, 28 (2d Cir.1983). Only if the second cause of action entitles the plaintiff to recover for an injury separate from the injury compensated by the award for the first cause of action, or at least for an additional component of injury not covered by the first cause of action, may additional damages be awarded. Similarly, once an award of damages has been determined for an injury, there may not be additional compensatory damages for that same injury from two or more defendants. The jury should be asked what amount of money reasonably compensates the plaintiff for the injury and which of the defendants are liable for causing that injury. Only punitive damages vary from one defendant to another.
 
 
 29
 The pending case presents an added complexity, because, though some of Bender's causes of action could have resulted in separate injuries, e.g., false arrest and battery, others are at least partially duplicative, e.g., false arrest and infliction of emotional distress. Whatever injury Bender suffered from being falsely arrested is distinct from the injury she suffered when struck by Officer Corpes. However, at least part of the injury she suffered from the false arrest for assault--loss of liberty--is part of the injury she suffered from the intentional infliction of emotional distress. Similarly, at least part of the injury she suffered from the battery--emotional pain and suffering--is part of the injury she suffered from the emotional injury tort. See O'Neill v. Krzeminski, 839 F.2d 9, 13 (2d Cir.1988) (emotional pain compensable as component of damages for police brutality). We acknowledge, as Judge Cedarbaum suggested, that the tort of inflicting emotional distress in the context of a false arrest or a malicious prosecution possibly involves some component of damages over and above the damages that may be awarded for these police misconduct torts. Nevertheless, even if New York should subsequently inform us that this is so, the award against Corpes of $150,000 for infliction of emotional distress duplicates substantial portions of the awards of $10,000 for false arrest and $80,000 for malicious prosecution.[3]
 
 
 30
 Duplication occurred not only between awards for different causes of action but also between awards against different defendants. There was at least some duplication between the $700 and $10,000 awards for the two claims of false arrest, and the fact that different defendants made the arrests does not justify duplicative awards, at least in a case like Bender's, where the two arrests resulted in a single period of confinement.[4] Similarly, there was duplication between the $80,000 against Lt. Timmes and the $150,000 against Officer Corpes for malicious prosecution. Lt. Timmes and Officer Corpes were alleged to have maliciously prosecuted the same charges, and the wrongful maintenance of those charges can result in only one award of damages. Of course, as in any tort case, liability for damages may be imposed on any defendants who proximately caused the injury.
 
 
 31
 A proper verdict form and jury charge would have focused the jury's attention on the extent to which the injuries resulting from the various torts alleged were separate, and the extent to which they were not. As to the latter, the jurors should have been instructed that they can award additional damages, beyond what they award for an overlapping tort, only to the extent that they find some aspect of injury that has not been already compensated for by the award of damages for the related tort. Instead, the verdict form simply asked what is the amount of damages proximately caused by each tort. The jury charge instructed, "If you find that a defendant is liable on one or more of plaintiff's claims, as I have explained them, then you must award the plaintiff sufficient money to compensate her for any injury proximately caused by that defendant's conduct." This instruction would have been correct in a case where a plaintiff's claims allege entirely distinct injuries, but where, as here, the injuries from the various claims are substantially overlapping, the omission of any instruction to avoid totally or partially overlapping awards risked, if not invited, duplication.[5] The wording of the verdict form maintained that risk. In addition, as we have repeatedly explained, the jury should have been instructed first to ascertain the amount of compensable damages to be awarded for each injury (or incremental injury not previously compensated) and then to determine which of the defendants was liable for such damages. See Rodick v. City of Schenectady, 1 F.3d 1341, 1348-49 (2d Cir.1993); Gagnon v. Ball, 696 F.2d 17, 19 n. 2 (2d Cir.1982); cf. McFadden v. Sanchez, 710 F.2d 907, 914 n. 6 (2d Cir.) (individual awards against different defendants appropriate for punitive damages but not for compensatory damages), cert. denied, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983).
 
 
 32
 In some cases, seemingly duplicative awards made separately for overlapping causes of action or against different defendants have been sustained where it appeared that the jury intended to award the aggregate sum. See Gentile, 926 F.2d at 154 (federal and state law claims; jury polling indicated awards were independent); Aldrich v. Thomson McKinnon Securities, Inc., 756 F.2d 243, 248 (2d Cir.1985) (multiple defendants). There is no such indication in this case.
 
 IV. Appropriate Disposition
 
 33
 We are left with an aggregate award of $300,700, which we conclude is excessive and which we conclude is highly likely to have been artificially inflated by duplication of awards among causes of action and among defendants. The normally appropriate remedy of a new trial or at least a conditional order for a new trial, subject to acceptance of a remittitur, is not inevitably appropriate, however, because of the inexplicable failure of the defendants to object to either the jury charge, the wording of the jury verdict form, or the excessiveness of the aggregate amount. Nevertheless, we deem the excessiveness of the aggregate award to be plain error, especially since it so likely results from impermissible duplication.
 
 
 34
 If appellants had properly challenged the aggregate award, we might well have ordered a new trial unless Bender agreed to a very substantial remittitur. But appellants have challenged on appeal only the component of the $300,700 judgment attributable to the emotional distress claim, and we think it would be unwarranted to require Bender to remit anything more than the $150,000 awarded for that claim. As to that component of the award, we conclude that, whether or not New York would sustain Bender's claim of emotional distress on these facts, the aggregate award is excessive, primarily because of the considerable extent to which it represents a duplication of damages, and in the circumstances of this case, that excessiveness is plain error despite the lack of objection in the trial court. To remedy that excessiveness, at least down to the level of the amount unchallenged by appellants, we will reverse the judgment and order a new trial unless Bender agrees to remit $150,000. If the remittitur is not made, we leave to the District Court, on remand, the determination of whether the new trial should be limited to a retrial of the damages issues.[6]
 
 
 35
 Reversed and remanded for a new trial unless a remittitur is accepted.
 
 
 
 *
 Judge McLaughlin, who was originally a member of the panel, recused himself just prior to oral argument, and the appeal is being decided by the remaining two members of the panel, who are in agreement. See 2d Cir.R. § 0.14(b); Murray v. NBC, 35 F.3d 45, 46-47 (2d Cir.1994)
 
 
 [1]
 It is not clear from the record why the $700 was awarded jointly and severally against Heinz and O'Sullivan, since the jury found only Timmes liable for this sum
 
 
 [2]
 An additional award of $150,000 for pain and suffering was sustained on evidence of physical disabilities and an atypical anxiety disorder that had resulted in a personality change. Gardner, 907 F.2d at 1353
 
 
 [3]
 There was also likely duplication between the awards for false arrest and malicious prosecution. Under New York law, damages for false arrest are to compensate for injuries from the beginning of custody to arraignment, and damages for malicious prosecution are to compensate for injuries after arraignment. See Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.1992); Dabbs v. State, 59 N.Y.2d 213, 218, 464 N.Y.S.2d 428, 430, 451 N.E.2d 186, 188 (1983). The jurors in the pending case were not informed of this distinction, and it is unlikely they were aware of it
 
 
 [4]
 At first glance, the loss of liberty injury resulting from the arrest for assault would seem to duplicate entirely the loss of liberty injury resulting from the arrest for disorderly conduct, since the confinement for both arrests resulted in the same time in confinement and under the same conditions. However, Bender's evidence permitted the jury to find that the disorderly conduct arrest alone would not have resulted in any confinement
 
 
 [5]
 In a recent police misconduct case tried in the District of Connecticut, Judge Chatigny instructed the jury:
 The plaintiff may not recover twice for the same injury. Accordingly, if you find that the plaintiff is entitled to a verdict on both the excessive force claim and the claim for intentional infliction of emotional distress, you may not compensate her twice for any emotional distress she might have suffered.
 Gould v. Langston, No. 3:92CV499(RNC) (D.Conn. Nov. 15, 1995) (jury charge).
 This language is helpful, and, if applicable state law permits recovery for an overlapping tort like emotional distress because some separate component of injury is compensable, beyond the injuries compensated under other claims, a court might usefully add:
 Any damage award for the emotional distress claim must be limited to the component of injury you find sustained for this claim, if any, over and above whatever emotional distress you have already compensated by your awards for other claims.
 
 
 [6]
 Since it appears that the City has agreed to pay whatever sums are awarded against the individual officers, we see no need to apportion among the defendants the amount of the judgment remaining after remittitur