REENA RAGGI, *Circuit Judge*, concurring in part and dissenting in part:

I concur in the majority opinion to the extent it reverses the grant of judgment as a matter of law to Crossan. I respectfully dissent, however, from Part III.C.2, which concludes that the district court committed fundamental error in failing to charge the jury that it could award Kerman compensatory damages for lost liberty based on the loss of his time while he was unlawfully confined. See Maj. Op. at **[74-75]** ("[T]he trial court should have informed the jury that if it found Crossan acted without probable cause it should award Kerman compensation for the loss of his liberty. . . . Kerman remains entitled to have a jury assess the compensation he should be awarded on his Fourth Amendment claim against Crossan and his state-law claims against Crossan and the City for his loss of the time spent in the postsearch confinement without his consent.").

As this court recently reiterated, the standard for establishing that a civil jury charge is fundamentally erroneous under Federal Rule of Civil Procedure 51 is stern. See SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 343 (2d Cir. 2004). More is required than "plain error," as that term is understood in the criminal context. Id. An error will be deemed fundamental in a civil case only if it is "so serious and flagrant that it goes to the very integrity of the trial." Id. (quoting Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 61 (2d Cir. 2002) (quoting Shade ex rel. Velez-Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 312 (2d Cir. 2001))). I do not think this is such a case.

As the majority opinion explains, an individual subject to false imprisonment may be

1

compensated not only for tangible injuries, such as out-of-pocket expenses and lost wages, but also for intangible injuries, such as loss of time, physical discomfort or inconvenience, mental suffering, and humiliation. See Maj. Op. at **[66]**; see also Raysor v. Port Auth. of New York & New Jersey, 768 F.2d 34, 39 (2d Cir. 1985); W. Page Keeton et al., Prosser & Keeton on Law of Torts § 11, at 48 (5th ed. 1984). Precisely because false imprisonment is "a dignatory tort," 59 N.Y. Jur. 2d False Imprisonment and Malicious Prosecution § 147, at 406 (2003), the injuries generally resulting from it are likely to be intangible. Thus, in Raysor v. Port Authority of New York & New Jersey, 768 F.2d at 39, a false arrest case pursued by a pro se plaintiff, this court ruled that the district court committed fundamental error when it failed to charge the jury that it could award monetary damages for intangible injuries, even though no such charge was requested.

Relying on Raysor, the majority concludes that in this case the district court committed a similar fundamental error by failing sua sponte to charge the jury that it could compensate Kerman for the intangible injury of lost time. I am not convinced. In Raysor, the error was a total failure to instruct the jury that intangible injuries were compensable for false imprisonment. By contrast, in this case the district court did not overlook Kerman's entitlement to compensation for intangible injuries. To the contrary, it specifically instructed the jury that it could award damages for any "emotional mental anguish" that Kerman had sustained as a result of his false imprisonment. Trial Tr. at 760. Because the intangible injuries caused by false imprisonment are "large[ly] . . . mental," Prosser & Keeton § 11, at

2

48, this charge afforded the jury considerable latitude in making a compensatory award. Indeed, the charge comported with Kerman's trial strategy. In arguing for damages in summation, Kerman's counsel focused exclusively on the mental humiliation his client had suffered as a result of the unlawful detention, repeatedly emphasizing the extent of his embarrassment, particularly in being removed from his home in a restraint bag. See Trial Tr. at 714-17, 721-23. Nowhere in summation did counsel allude to any loss-of-time injuries sustained by Kerman. Thus, the error in this case is not, as in Raysor, the court's failure to instruct the jury that it could compensate plaintiff for intangible injuries. Nor is it a failure to instruct the jury that it could compensate plaintiff for the specific intangible injuries argued by plaintiff in summation. Instead, the identified charging error is the court's failure to instruct the jury that it could compensate plaintiff for a type of intangible injury never argued by plaintiff: the loss of time.

In concluding that this error is fundamental, the majority appears to equate "loss of time" with "loss of liberty," and to hold that any unlawful detention that spans several hours necessarily involves lost time that should receive a compensatory award. See Maj. Op. at **[74-75]**. I must disagree.

Preliminarily, I do not understand "lost time" and "lost liberty" to be identical concepts. "Loss of liberty" describes the Fourth Amendment violation that occurs when a person is confined against his will by the government; it is the constitutional tort. "Loss of time," on the other hand, is simply one of a variety of compensable injuries, tangible and

3

intangible, that can result from a loss of liberty.[1]  A loss of liberty, by itself, does not warrant

a compensatory damages award any more than any other constitutional violation.  This is not

to ignore the seriousness of constitutional violations.  The law vindicates such violations

through awards of nominal damages, even absent proof of actual injury.  See Memphis Cmty.

Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986) ("By making the deprivation of such

rights actionable for nominal damages without proof of actual injury, the law recognizes the

importance to organized society that those rights be scrupulously observed; but at the same

time, it remains true to the principle that substantial damages should be awarded only to

---

[1] One commentator catalogues these injuries to include loss of time, physical discomfort or inconvenience, physical injury or injury to health, mental suffering, humiliation, business loss, harm to reputation or credit, loss of family company, as well as any special damages unique to the particular plaintiff's case.  See Prosser & Keeton § 11, at 48.  Another lists mental anguish or suffering, shame and humiliation, ridicule and scorn, moral and mental degradation, onerous and lengthy interrogation, indignity and disgrace, damage to reputation, interruption to or loss of business, loss of earnings or credit, loss of or damage to property, physical injury, including medical expenses, the loss of family company, disturbance of one's normal life, as well as legal and other expenses associated with securing release, with no distinct mention of "lost time."  See 59 N.Y. Jur. 2d False Imprisonment and Malicious Prosecution § 147, at 406-08; see also N.Y. Pattern Jury Instructions 3.5 Commentary at 49 (citing cases holding that plaintiffs who suffer false imprisonment may recover compensatory damages for mental anguish, shame and humiliation, injury to reputation, physical suffering or bodily injuries, loss of earnings or business, and medical and legal expenses).

At least one district court in this circuit appears to have used "deprivation of liberty" in charging a jury to describe the intangible injuries to a person's dignity that could result from false imprisonment in order to distinguish those injuries from the pain and suffering attributable to diagnosed physical and mental injuries.  See Gardner v. Federated Dep't Stores, Inc., 717 F. Supp. 136, 137-38 (S.D.N.Y. 1989), aff'd in part and vacated in part, 907 F.2d 1348 (2d Cir. 1990).  It seems to me more confusing than helpful to use "deprivation of liberty," the constitutional tort, to refer to a subset of the injuries that can result therefrom.

4

compensate actual injury . . . ." (quoting Carey v. Piphus, 435 U.S. 247, 266 (1978))); see also Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001) (upholding nominal award of $1.00 in case of unlawful strip search).  But to recover compensatory damages for a loss of liberty in a § 1983 action, a plaintiff must show that he suffered an injury compensable under the common law of torts.  See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. at 306; Carey v. Piphus, 435 U.S. at 258-59.[2]

"Loss of time" is an injury that has long been cognizable at common law.  Its focus, however, is not on the general loss of liberty, but on a discrete form of economic harm: plaintiff's inability to work.   See 22 Am. Jur. 2d Damages §§ 138, 139, 158 (2003); 25 C.J.S. Damages § 54, at 391-92 (2002); 36 N.Y. Jur. 2d Damages § 68, at 118-19 (1984); see also Southwestern Brewery & Ice Cream Co. v. Schmidt, 226 U.S. 162, 169 (1912) (Holmes,

---

[2] I do not read cases such as Hallenbeck v. City of Albany, 99 A.D.2d 639, 472 N.Y.S.2d 187 (3d Dep't 1984) and Woodard v. City of Albany, 81 A.D.2d 947, 439 N.Y.S.2d 701 (3d Dep't 1981), cited by the majority, see Maj. Op. at **[66-67]**, to hold otherwise.  In each of those cases, the courts vacated excessive jury awards in false arrest cases because plaintiffs failed to demonstrate "substantial physical or mental injury," ordering new trials unless the plaintiffs agreed to reduced verdicts of $10,000 and $7,500 respectively. Hallenbeck v. City of Albany, 99 A.D.2d at 640, 472 N.Y.S.2d at 189 (emphasis added); accord Woodard v. City of Albany, 81 A.D.2d at 947, 439 N.Y.S.2d at 702.  In neither case, however, did the court suggest that if the plaintiffs went to trial, the juries would have to award them some damages for lost liberty, even absent a showing of physical or mental injury.  Similarly in Gardner v. Federated Department Stores, Inc., 907 F.2d at 1353, the case in which the district court labeled injuries to plaintiff's dignity as a "deprivation of liberty," this court ordered a new trial unless plaintiff accepted $50,000 in lieu of the jury's excessive award of $150,000.  We did not, however, suggest that plaintiff could recover such a damage award without proof of any injury to her dignity.  In fact, the evidence appears to have included specific proof of humiliation.  Id. at 1350.

5

J.) (noting that jury was instructed to "consider the plaintiff's loss of time with reference to his ability to earn money"); Kies v. Binghamton R.R. Co., 177 A.D. 242, 245, 163 N.Y.S. 736, 739 (3d Dep't 1917) (holding that damages for loss of time require proof of the value of services that an injured party could have performed). Loss of time is a more expansive concept than lost wages. It compensates a plaintiff for his lost capacity to earn, and may be sought even by a plaintiff who was unemployed at the time of the injury. See Espana v. United States, 616 F.2d 41, 43 n.2 (2d Cir. 1980); Restatement (Second) of Torts § 924(b) & cmt. c (1979); 22 Am. Jur. 2d Damages § 158, at 169; 36 N.Y. Jur. 2d Damages § 68, at 118-19; see also C. McCormick, Handbook on the Law of Damages § 87, at 309 (1935) (McCormick on Damages) (observing that the value of lost time can be shown by "opinion evidence of what plaintiff's services are worth in the local market"). For this reason, commentators view lost time as inherent in false imprisonment and compensable through a general damages award unless, of course, particular lost earning opportunities are proved to warrant specific damages. McCormick on Damages § 107, at 376. In this respect, lost time is the economic counterpart to the psychic injury also inherent in false imprisonment: interference with a person's ability to enjoy life.[3] This injury is also recognized and compensated generally at common law, but as a form of mental anguish and suffering, see

---

[3] Although the majority asserts that lost time encompasses injuries that go beyond the economic and the psychic, it does not identify what these are or how a district court should instruct a jury to distinguish among these injuries to ensure reasonable general damages awards.

6

id., the injury charged by the court and rejected by the jury in Kerman's case.[4]

Kerman's decision not to seek damages for loss of time, but to focus, instead, on obtaining a compensatory award based on the pain and mental anguish experienced during his detention cannot be deemed strategically unreasonable. Kerman's somewhat-fragile mental state on the date of the arrest would have made it difficult to assert that his earning capacity at the time was particularly high. On the other hand, counsel could, and did, suggest that Kerman's vulnerability made his mental anguish particularly acute. Where counsel makes a strategic decision to argue one type of intangible injury and not another, I do not think the district court commits fundamental error by charging only the intangible injury theory pursued.

In sum, I do not think the integrity of Kerman's trial was compromised by the district court's failure to charge loss of time, a theory of economic injury not pursued by plaintiff. Nor, in light of Memphis Community School District v. Stachura, do I think the trial's integrity can be questioned based on the court's failure to instruct the jury that it could award compensatory damages for a loss of liberty in the abstract, without regard to any injury compensable at common law. The district court having properly charged the jury that it could compensate Kerman for mental anguish and suffering – a form of intangible injury

---

[4] I expect it will be a rare case in which a jury decides not to award any compensatory damages for mental anguish and suffering to a plaintiff who has been detained for more than a trivial amount of time in violation of the Fourth Amendment. Nevertheless, for the reasons stated by the majority, I agree that we must defer to the jury's decision not to award Kerman any such damages.

recognized at common law, long associated with unlawful confinement, and exclusively pursued by plaintiff – I cannot conclude that there was a fundamental error in the charge warranting a new trial. Accordingly, on this point, I respectfully dissent.