Aftab AHMED, Plaintiff,

v.

Gary H. GELFAND, Louis Cosenza, and Jamaica Hospital Medical Center, Defendants.

No. 98 CV 6348(SJ).

United States District Court, E.D. New York.

March 5, 2001.

Oscar L. Amorrow, Brooklyn, New York, for Plaintiff.

Kalkines, Arky, Zall, & Bernstein, LLP, New York City, By: Ronald G. Blum, for Defendant.

## MEMORANDUM AND ORDER

JOHNSON, District Judge.

Plaintiff Aftab Ahmed ("Plaintiff"), brings this action against Defendants, Gary H. Gelfand ("Gelfand"), Louis Cosenza ("Cosenza"), and Jamaica Hospital Medical Center (the "Hospital"), (collectively, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. § 216 ("FLSA"), 42 U.S.C. §§ 1985 and 1986, and the Americans with Disabilities Act, 29 U.S.C. § 12101, *et seq.* (the "ADA"). Plaintiff has also raised New York state law claims alleging intentional infliction of emotional distress and defamation. Presently before the Court is Defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56(b). For the reasons stated herein, Defendants' motion for summary judgment is granted in its entirety.

## BACKGROUND

Plaintiff was employed by the Hospital as an evening shift staff pharmacist in the Hospital's Pharmacy Services department (the "Pharmacy") from August 10, 1992, until approximately January 13, 1998. Defendant Gelfand is the Director of the Pharmacy and Defendant Cosenza is the Assistant Director of the Pharmacy. The Pharmacy is responsible for providing all medications for both its patients and the residents of a 204–bed nursing home located adjacent to the Hospital.

Plaintiff states that some time after he was hired, but prior to November 1996, the Pharmacy experienced a personnel shortage. (Compl.¶ 11.) Plaintiff claims that he repeatedly complained to Cosenza and Gelfand about the alleged shortage and the resultant increase in his workload. (Compl.¶ 11–12.) According to Plaintiff, during a Pharmacy staff meeting in December 1996. Cosenza expressly stated that Plaintiff's religion was the cause of the "problems" that the Pharmacy was experiencing. (Compl.¶ 12.) Plaintiff is Muslim, and prior to being hired, advised Defendants that his religious beliefs required him to pray for two to three minutes each day at sunset. Plaintiff asserts, however, that his religious observance never adversely affected his job performance. (Compl.¶ 10.) Plaintiff further states that Cosenza and Gelfand engaged in religious discrimination and harassment from December 1996 until Plaintiff was terminated in January 1998. (Compl.¶¶ 12, 14.) Plaintiff essentially alleges that he was terminated because of his religious beliefs and in retaliation for protesting the Hospital's allegedly unlawful employment practices.

Defendants contend that Plaintiff began making errors in filling prescriptions shortly after he was hired in August 1992. (Def. Mem. at 5.) Defendants have produced numerous documents chronicling Plaintiff's performance from 1993 to 1998. (Def. Notice of Mot., Exs. 4, 5, 8, 10, 12, 14, 15.)[1] These documents indicate Defendants' concerns regarding Plaintiff's accuracy started as early as 1993. (Def.

1. Plaintiff alleges that these documents have

been falsified by Defendants and has submit-

Notice of Mot., Ex. 4.) Defendant Gelfand has declared that during the first six months of 1997, Plaintiff made more mistakes than any other pharmacist made in an entire year. (Gelfand Decl. ¶ 24.) These mistakes include entering the wrong dose or frequency for prescribed medications, entering and dispensing medications to the wrong patient, and entering and dispensing the wrong medications. (Gelfand Decl. ¶ 22.)

Defendants state that due to Plaintiff's allegedly persistent errors, Gelfand planned to ask Plaintiff to resign on January 13, 1998. (Gelfand Decl. ¶ 32.) Defendants state that Plaintiff called in sick on that date. However, during subsequent conversations with Gelfand. Plaintiff requested that he be laid off so that he could collect benefits from his union. (Gelfand Decl. ¶ 34.) Defendants assert that Plaintiff was later informed that he could not be laid off and was given until January 26, 1998 to resign. (Gelfand Decl. ¶ 35.) Gelfand attests that Plaintiff did not respond by that date, and on February 3, 1998, Plaintiff was mailed a discharge notice and advised that he had been terminated. (Gelfand Decl. ¶ 35; Def. Notice of Mot., Ex. 20.) Plaintiff filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 9, 1998 alleging religious discrimination, and instituted the instant action in October of that same year.

## I. Standard of Review

### A. Conversion of Rule 12(b)(6) Motion into Motion for Summary Judgment

■ When considering a defendant's motion to dismiss under Fed.R.Civ.P.

12(b)(6), the Court must accept as true factual allegations in the complaint and construe all reasonable inferences in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). However, in a motion to dismiss under 12(b)(6), where affidavits and exhibits in addition to the pleadings are presented to and not excluded by the court, the court must convert the 12(b)(6) motion into a motion for summary judgment. Fed. R.Civ.P. 12(b); *See also M.J.M. Exhibitors, Inc. v. Stern (In re G. & A. Books, Inc.),* 770 F.2d 288 (2d Cir.1985). In the interest of fairness, all parties are to be given reasonable opportunity to present all material relevant to a summary judgment motion. Fed.R.Civ.P. 56(c).

The motion currently before the Court is styled as a motion to dismiss, or in the alternative for summary judgment. Both parties have submitted exhibits outside the pleadings and Plaintiff was aware from the instant the motion was filed that the Court might construe the motion as one for summary judgment. As Plaintiff had ample opportunity to present relevant material outside the record in its opposition to Defendants' motion, the Court moves forward treating Defendants' motion as one for summary judgment pursuant to Fed. R.Civ.P. 56.

### B. Summary Judgment Standard Of Review

Summary judgment is appropriate when there is no genuine issue as to any materi-

---

ted several KeaMed Pharmacy System computer print-outs to serve as evidence of the alleged tampering. (Pl.Opp'n, Exs.1–6.) The Court has reviewed these submissions, and from their content, cannot infer any fraudu-

lent activity on the part of Defendants. As such, the Court finds that Plaintiff's accusations of document falsification are wholly conclusory.

al fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the movant to establish the absence of any material factual issues, and the acts must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has met its burden demonstrating that there is no genuine issue of material fact to be tried, the burden shifts to the non-moving party to present "significantly probative" supporting evidence showing that there is a material factual issue for trial. *Id.* at 249, 106 S.Ct. 2505. "Only those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment, and mere conclusory allegations will not suffice." *Id.* at 248, 106 S.Ct. 2505.

## II. Plaintiff's Claims

### A. §§ 1985 and 1986

■ Plaintiff alleges that Defendants conspired to deprive him of his civil rights, in violation of 42 U.S.C. § 1985(3). Section 1985 provides a cause of action to redress injury resulting from a conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3) ("§ 1985(3)"). Plaintiff further claims that the Hospital failed to prevent the conspiracy, in violation of 42 U.S.C. § 1986 ("§ 1986").

■ A Plaintiff claiming violation of § 1985(3) must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *Mian v. Donaldson,* 7 F.3d 1085, 1087 (2d Cir.1993) (citing *United Bd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). The conspiracy must also be motivated by some racial or otherwise class based discriminatory animus. *Mian,* 7 F.3d at 1088. Furthermore, it is well settled that there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment. *Girard v. 94th Street and Fifth Ave. Corp.,* 530 F.2d 66, 71 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

Plaintiff alleges that Gelfand and Cosenza "conspired to discriminate against him when they could not accommodate him and his religious practices." (Pl. Opp'n at 9.) Plaintiff also claims that Defendants conspired with "other parties" and with Plaintiff's private insurance company in order to deny Plaintiff disability benefits. *Id.* Finally, Plaintiff claims that Gelfand and Cosenza were acting in their capacity as Hospital employees, but were pursuing "personal interests" which Plaintiff describes as "separate and apart from the [hospital] entity." *Id.* at 10.

It is clear to the Court that Gelfand and Cosenza's allegedly discriminatory actions were taken in their respective capacities as Director and Assistant Director of Pharmacy Services and that such actions were

related to the business of the Pharmacy. Plaintiff has conceded as much in his Complaint and referenced this concession in his Local Rule 56.1 Statement. (Compl. ¶¶ 12–14, 42; Pl. Rule 56.1 Statement ¶ 3.) Furthermore, Plaintiff does not identify the substance of Gelfand and Cosenza's alleged "personal interests." Plaintiff's intra-Hospital conduct is, therefore, not actionable under § 1985(3).

■ Plaintiff's claim that Defendants conspired with third parties must also fail. In his opposition papers, Plaintiff states that Defendants conspired with "other parties." however, Plaintiff's insurance company is the only third party identified. While Plaintiff alleges that Defendants provided incorrect information to his insurance carrier, Plaintiff does not describe any agreement between Defendants and the insurance carrier to deprive Plaintiff of a federal right. Accordingly, Plaintiff has failed to adequately plead the essential elements of a cause of action under § 1985(3). As § 1986 is clearly predicated on the existence of a valid § 1985 claim, Plaintiff's § 1986 claims must fail as well. Accordingly, the Court grants summary judgment for Defendants on Plaintiff's claims brought pursuant to §§ 1985 and 1986.

## B. Title VII

■ Title VII prohibits an employer from discharging or otherwise discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's ... religion...." 42 U.S.C. § 2000e–2(a). In order to sustain a Title

VII action in district court, a formal charge must be filed with the EEOC within 180 days of the discriminatory conduct, or where the plaintiff first files with a state or local equal employment agency, within 300 days of the violation. *See* 42 U.S.C. § 2000e–5(e)(1). Failure to file an EEOC charge within the required time bars any subsequent court action. *See Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir.1994). The normal statute of limitations rules under Title VII do not apply, however, where "employees are hired or refused employment [or promotion] pursuant to a continuous practice and policy of discrimination." *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Instead, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.*

■ Plaintiff alleges that Defendants discriminated against him and ultimately terminated him because of his religion, yet Plaintiff has again failed to plead his claim with the requisite specificity. Title VII requires a plaintiff to show some direct, statistical, or circumstantial evidence of discrimination. *Bickerstaff v. Vassar College*, 196 F.3d 435, 436 (2d Cir.1999). Plaintiff has alleged only one incident which would serve as evidence in support of his claim and has failed to put forth any evidence of a continuous policy or practice of discrimination.[2] This single incident is not actionable, however, as Plaintiff failed to file a timely charge with the EEOC.

---

**2.** Plaintiff cites to two additional incidents as being discriminatory, however, the Court disagrees. First, Plaintiff states that in late 1996, he told Cosenza that he needed a vacation and Cosenza replied "what you need is a good burial." Second, Plaintiff alleges that one of his supervisors nicknamed him Abra-

ham Lincoln because of the length and style of his beard. The Court finds that a jury could not determine, under even the most liberal of readings, that either of these statements constitute direct or circumstantial evidence of religious discrimination.

Plaintiff filed a Notice of Charge of Discrimination with the EEOC in June 1998. The time that elapsed between the alleged incident and Plaintiff's EEOC complaint is well beyond the 180 days provided in Title VII. Plaintiff's Title VII claims are accordingly time-barred, and must, therefore, be dismissed.

## C. ADA

▇▇▇▇▇ The ADA prohibits employers, covered by the Act, from discriminating:

against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir. 1998). Specifically, the plaintiff must show by a preponderance of the evidence that: (1) he is a disabled person under the ADA; (2) he is otherwise qualified to perform his job; and (3) he suffered an adverse employment action because of his disability. *Id.* at 869–70.

▇▇▇ In order to establish disability under the ADA, Plaintiff must prove one of the following: (A) that he has a physical impairment[3] and that such impairment substantially limits[4] one or more of his major life activities; (B) that there is a record of such an impairment; **or** (C) that he is being regarded as having such an impairment. *See* 42 U.S.C.A. § 12102(2) (emphasis added).

Here, Plaintiff has failed to establish a prima facie case. The Complaint identifies Plaintiff's impairments as "high blood pressure and severe emotional distress," allegedly resulting from "constant harassment" by Defendants. (Compl.¶ 27.) Even if the Court were to find that Plaintiff has proven an impairment, Plaintiff has not met the ADA's threshold definition of disability. The ADA requires that Plaintiff not only show that he suffers from an impairment, but he must connect that impairment to the real or perceived substantial limitation of some major life activity. Here, Plaintiff has not done so.

As Defendants correctly contend, even if the Court were to assume that Plaintiff intended to identify working as the major life activity, Plaintiff has failed to demonstrate that his impairment substantially limited his ability to work. A substantial limitation in the major life activity of work-

3. The Equal Employment Opportunity Commission ("EEOC") is the agency with principal responsibility for the enforcement of the ADA and to whose interpretation of the statute courts are required to accord great deference. *See Muller v. Costello*, 187 F.3d 298, 312 (2d Cir.1999). The EEOC has defined a "physical impairment" under the ADA as:

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).

4. The EEOC has defined "substantially limits" to mean:

(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

ing is defined as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). As Plaintiff does not allege such a restriction, he is unable to establish a prima facie case under the ADA.[5]

## D. State Claims

### 1) Intentional Infliction of Emotional Distress

■ Plaintiff's claims for intentional and negligent infliction of emotional distress are subject to the very strict standard set forth in New York State law. Liability will only be found where conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bender v. City of New York*, 78 F.3d 787, 790–91 (2d Cir. 1996). Plaintiff has not outlined any conduct which fits the *Bender* standard. This Court finds that even if all Defendants' alleged bad acts were taken as true, those acts do not rise to the level necessary to support a claim for intentional infliction of emotional distress under New York state law.

■ The Court further notes that Plaintiff's allegations are in substance, a reiteration of Plaintiff's belief that he was unfairly terminated. New York law does not recognize tort claims for wrongful discharge, accordingly, a plaintiff's attempt to disguise such a claim as one for intentional infliction of emotional distress will not succeed. *See Murphy v. American Home Products Corporation*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

### 2) Defamation

■ Plaintiff asserts that Defendants began defaming him sometime after December 16, 1996. (Compl.¶ 39.) The alleged defamatory statements were made in "letters to Plaintiff" and in "false statements and accusations to Plaintiff in the presence of other employees, and also to their lawyers concerning Plaintiff's employment and profession." *Id.*

■ Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need not plead a defamation claim in considerable detail, but must concisely state the basis of his claim. *See* Fed.R.Civ.P. 8(a); *Broome v. Biondi*, No. 96 Civ. 0805, 1997 WL 83295, at *1 (S.D.N.Y. Feb. 10, 1997). As a practical matter, each pleading must be specific enough to "afford defendant sufficient notice of the communication complained of to enable him to defend himself." *Kelly v. Schmidberger*, 806 F.2d 44, 45 (2d Cir.1986)(citing *Liguori v. Alexander*, 495 F.Supp. 641, 647 (S.D.N.Y.1980)). As applied to defamation claims, this requires a plaintiff to merely state the substance of the purported communication, who made the communication, when it was made, and to whom it was communicated. *Broome*, 1997 WL 83295, at *1–2. Defendants argue that Plaintiff has failed to meet the pleading requirements necessary to sustain a claim for defamation. This Court agrees. Plaintiff does not identify which Defendant made the supposedly defamatory statements, when the statements were made, or to which "other employees" the statements were communicated. Accordingly, Plaintiff's defamation claims cannot stand.

## E. Fair Labor Standards Act

■ Plaintiff asserts that Defendants violated the FLSA, 29 U.S.C. § 216

---

**5.** Plaintiff's only reference to an inability to work is a January 13, 1998 doctor's letter stating that Plaintiff was seen for angina and was advised to rest for two weeks. (Pl. Opp'n.Ex. 13.)

("§ 216"). Section 216 creates a private cause of action for violations of 29 U.S.C. § 215(a)(3). Under 29 U.S.C. § 215(a)(3), an employer is prohibited from discriminating against any employee because such "employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee." 29 U.S.C. § 215(3). This provision limits a plaintiff's cause of action to retaliation for filing a formal complaint and does not encompass complaints made to a plaintiff's supervisor. *See Lambert v. Genesee Hospital,* 10 F.3d 46, 55 (2d Cir.1993). While Plaintiff asserts that he complained to his supervisors on several occasions, nowhere does Plaintiff allege filing a formal complaint. Thus, Plaintiff cannot be afforded relief under the FLSA.

### F. Request for Discovery

 Plaintiff has requested an opportunity for discovery, stating that he cannot adequately respond to Defendants' motion because "crucial facts rest with the Defendants." (Pl. Opp'n at 11.) Under the Federal Rules of Civil Procedure, Rule 56(f), a party opposing summary judgment based on the asserted need for discovery must submit an affidavit stating: "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994). Plaintiff has submitted no such affidavit, and therefore, this Court cannot grant Plaintiff's request. The Court agrees with Defendants' contention that Plaintiff may not defer dismissal of this action in order to engage in a fishing expedition. Under the standards set forth in *Paddington Partners,* Plaintiff's request for discovery is denied.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.