Chantal BLASETTI, Plaintiff,

v.

Wayne PIETROPOLO, et ano., Defendants.

No. 02 CIV.2792 LAK.

United States District Court, S.D. New York.

Aug. 6, 2002.

---

John R. Lewis, for Plaintiff.

Christopher Renzulli, Jeffrey Malsch, Renzulli, Pisciotti & Renzulli, LLP, New York, NY, for Defendant Wayne Pietropaolo.

Jeffrey E. Hurd, Phelan, Burke & Scolamiero, LLP, Albany, NY, for Defendant Village of Hastings–on–Hudson.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff and defendant Wayne Pietropaolo, a Hastings–on–Hudson, New York, police detective, allegedly carried on a consensual sexual relationship. When plaintiff discovered she was pregnant, she broke it off. She now contends that Pietropaolo then harassed her and that these alleged actions violated her federally protected civil rights. She sues Pietropaolo and his employer, the Village of Hastings–on–Hudson, pursuant to 42 U.S.C. § 1983. The defendants move to dismiss the amended complaint.

*Facts*

As cases such as this often receive a good deal of publicity in the localities in which they arise, it is well to emphasize that the Court is obliged to assume the truth of the plaintiff's allegations for purposes of deciding motions to dismiss. In consequence, its description of the events here cannot properly be taken as a determination of what actually took place; the facts no doubt are hotly disputed and will remain to be determined in the event the complaint is legally sufficient.

According to plaintiff, who was married at the time, she told Pietropaolo in 1997 or early 1998 that she was pregnant and that she no longer would continue her intimate relationship with him. Pietropaolo then began harassing plaintiff by, among other things, repeated telephone calls, confronting her on the streets of Hastings–on–Hudson, making indecent and sexual suggestions and comments, and asking her for lewd photographs of herself. Some of this alleged behavior took place while Pietropaolo was on duty, frequently while driving his official vehicle. According to plaintiff, "various policy-making Village employees, including the Village Manager, the Village Clerk, the Town Superintendant [sic], and the Chief Police," were aware of Pietropaolo's conduct.[1]

The harassment allegedly continued until November 2001, when plaintiff served Pietropaolo with a state law notice of claim. She contends that it caused her severe emotional distress, that she was forced to seek psychiatric treatment, and that it led her to abuse drugs.

The amended complaint contains three claims for relief. The first is brought under Section 1983 and alleges that Pietropaolo's behavior deprived plaintiff of her civil rights. It seeks also to hold the

---

1. Am. Cpt. ¶ 17.

Village in damages on theories that it was aware of and indifferent to Pietropaolo's actions and on a failure-to-train theory. It seeks compensatory and punitive damages against both defendants.

The second and third claims for relief are pendent state law claims for intentional infliction of emotional distress and harassment. They seek compensatory and punitive damages against both defendants, the Village on the theory of *respondeat superior.*

### Discussion

### I. Grounds Common to Both Motions

#### A. Sufficiency of the State Law Emotional Distress Claim

■ Defendants claim that the second claim for relief, which alleges intentional infliction of emotional distress, is insufficient as a matter of state law because the alleged conduct was not sufficiently outrageous.

New York unquestionably "sets a high threshold for conduct that is [sufficiently] 'extreme and outrageous' . . . to constitute intentional infliction of emotional distress." [2] Indeed, it appears that the New York Court of Appeals never yet has upheld such a claim.[3] And while state courts frequently have dismissed such claims on the pleadings, the decisions are not uniform.[4] In view of the fairly egregious conduct alleged in the amended complaint and the Second Circuit's apparent reluctance to dismiss as a matter of law a claim

based on arguably less outrageous conduct,[5] the prudent course here is to deny the motions to dismiss to permit the record to be better developed.

#### B. Sufficiency of the Harassment Claim

■ The third claim for relief rests on the same factual allegations as the others but is characterized as one for "harassment." Defendants argue that there is no such cause of action under New York law. New York, however, recognizes an implied private right of action for criminal harassment in violation of the Penal Law.[6]

### II. Pietropaolo's Motion

Pietropaolo contends also that the Section 1983 claim is insufficient as a matter of law.

■ In order to state a claim under Section 1983, the plaintiff must allege that the defendant acted under color of state law and that the conduct complained of deprived the plaintiff of rights and privileges secured by the Constitution or laws of the United States.[7] Defendant Pietropaolo tacitly acknowledges that the complaint sufficiently alleges at least some conduct by him under color of state law. He contends, however, that plaintiff's interest in freedom from the infliction of emotional distress by the alleged campaign of harassment is not federally protected. Plaintiff rejoins that the conduct at issue was so devoid of any justification and so

---

**2.** *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996).

**3.** *See Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993).

**4.** *See Bender,* 78 F.3d at 790–91.

**5.** *Id.* at 791.

**6.** *Galella v. Onassis,* 487 F.2d 986, 994 n. 11 (2d Cir.1973); *Daniel v. Safir,* 175 F.Supp.2d 474, 481 (E.D.N.Y.2001); *Prignoli v. City of*

*New York,* No. 94 Civ. 4125(KMW), 1996 WL 340001, at *5 (S.D.N.Y. June 19, 1996); *True v. New York State Dept. of Corr. Servs.,* 613 F.Supp. 27, 33 (W.D.N.Y.1984); *Spock v. United States,* 464 F.Supp. 510, 516 (S.D.N.Y. 1978); *cf. Long v. Beneficial Fin. Co.,* 39 A.D.2d 11, 12–13, 330 N.Y.S.2d 664, 667 (4th Dep't 1972).

**7.** *E.g., Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994).

patently intended to injure that it violated her rights under the substantive component of the Due Process Clause of the Fourteenth Amendment.

Prior to the Supreme Court's decision in *County of Sacramento v. Lewis*,[8] this Court would have agreed with Pietropaolo. In *Lopez v. City of New York*,[9] it held that substantive due process could not ground a claim under Section 1983 for intentional infliction of emotional distress.[10] This view, however, is far too categorical in light of the subsequent decision in *County of Sacramento*.

That case involved the question "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender."[11] The Supreme Court began its analysis by acknowledging once again the existence of a substantive component to the Due Process Clause.[12] Noting its reluctance to expand the concept,[13] it nevertheless held that governmental abuse of power "that shocks the conscience" violates the victim's right to due process and passed quickly to the standard by which such abuses are to be identified.[14] While it held that deliberate or reckless indifference to life in the context of an otherwise justifiable automobile chase did not rise to the necessary level, essentially on the ground that such circumstances inherently do not permit deliberative conduct, it went on to make clear that

an opportunity for deliberation and a lack of a "substantial countervailing interest" justifying challenged conduct might yield a different result.[15] The Second Circuit, moreover, subsequently has made plain that "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience."[16]

There is nothing in the amended complaint that even remotely might be construed as suggesting any legitimate governmental purpose for Pietropaolo's alleged actions. The alleged circumstances of his harassment of the plaintiff suggest or, at least, would permit proof that he had ample opportunity for deliberation in the sense used by the Supreme Court in *County of Sacramento*. The pleading avers that he acted willfully, wantonly and maliciously, so plaintiff certainly might prove under this complaint that his was a malicious and sadistic abuse "of government power ... intended only to oppress or to cause injury ...."

Pietropaolo argues nevertheless that the complaint fails to state a claim upon which relief may be granted because courts repeatedly have held that verbal harassment, unaccompanied by any physical impact or harm, does not implicate Section 1983. And, to be sure, any number of cases stand for that proposition.[17] All of those relied upon, however, antedate both *County of Sacramento* and the Second Circuit's more

---

8.  523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

9.  901 F.Supp. 684 (S.D.N.Y.1995).

10.  *Id.* at 691.

11.  523 U.S. at 836, 118 S.Ct. 1708.

12.  *Id.* at 840, 118 S.Ct. 1708.

13.  *Id.* at 842, 118 S.Ct. 1708.

14.  *Id.* at 846–48, 118 S.Ct. 1708.

15.  *Id.* at 848–55 & n. 11, 118 S.Ct. 1708.

16.  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir.2001).

17.  *E.g., Haussman v. E.S. Fergus*, 894 F.Supp. 142, 149 (S.D.N.Y.1995); *Zeno v. Cropper*, 650 F.Supp. 138, 141 (S.D.N.Y.1986).

recent decision in *Johnson.*[18] These make clear that abusive governmental conduct that is sufficiently egregious and arbitrary, and that is unjustified by countervailing and legitimate state interests, may implicate the Due Process Clause. While the Court is entirely mindful of the historical role of the physical impact requirement in emotional distress cases, it is not now prepared to say, as a matter of law, that there are no circumstances in which a Section 1983 plaintiff can recovery for emotional injury where that injury was inflicted by conscience shocking behavior otherwise sufficient to violate the Due Process Clause.

■ This is not to say that plaintiff's path to recovery contains is unobstructed. It is far from clear that all of Pietropolo's alleged conduct occurred under color of state law.[19] Pietropolo's side of the story might well cast doubt on the suggestion that his alleged actions, even if they occurred, were intended solely to injure. The lack of any physical impact or, it appears, physical injury may well undermine the claim that Pietropaolo's conduct was so egregious as to shock the conscience. There may be other difficulties. But a district court may not grant a Rule 12(b)(6) motion unless it is clear that the plaintiff cannot prove any facts under the operative complaint that would entitle her

to relief.[20] This principle indisputably has governed Section 1983 cases at least since *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit.*[21] And Pietropaolo has not brought himself within it. The Section 1983 claim is sufficient to withstand the motion to dismiss.[22]

## II. The Village's Motion

### A. The Monell *Claim*

The Village, correctly noting that it may not be held liable on a *respondeat superior* theory for any Section 1983 violation by Pietropaolo, challenges the legal sufficiency of plaintiff's allegations under *Monell v. New York City Dept. of Social Services.*[23]

■ In order to cast a municipality in damages for a Section 1983 violation by one of its agents, the plaintiff must plead and prove that the injury complained of was the consequence "of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ."[24] "A policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiffs" and "can be based on municipal supervisors' knowing acquiescence in the unconstitutional behavior of their subordinates."[25] It may be inferred

18. Note 11, *supra.*

19. It is debatable, at least, for example, whether harassing telephone calls made while he was off duty were actions under color of state law.

20. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

21. 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

22. In view of this conclusion, it is unnecessary to address plaintiff's contention that Pietropaolo's actions violated a constitutionally protected right to privacy, an argument that

rests principally on *Galella v. Onassis,* 353 F.Supp. 196, 231 (S.D.N.Y.1972), *aff'd in part, rev'd in part,* 487 F.2d 986 (2d Cir.1973).

23. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

24. *Id.* at 694, 98 S.Ct. 2018.

25. *Thomas v. City of New York,* 814 F.Supp. 1139, 1151 (E.D.N.Y.1993); *see also, e.g., Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir. 1999); *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Villante v. Dept. of Corr.,* 786 F.2d 516, 519

also "where a municipality's failure to train amounted to 'deliberate indifference' of the rights of citizens"—that is, where

"(1) ... 'a policymaker [of the municipality] knows "to a moral certainty" that [its] employees will confront a given situation'; (2) ... 'the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; and (3) ... 'the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights.' "[26]

Plaintiff relies on both theories.

■ The amended complaint alleges that the Village Manager, the Village Clerk, the Town Superintendent[27] and the Chief of Police, among others, were aware of Pietrolpaolo's conduct, "yet took no steps to address or rectify said situation."[28] If any of these individuals was a policy making official, the amended complaint sufficiently alleges the requisite indifference. And while "the determination of whether a municipal official wields final policymaking authority regarding a partic-

ular action constitutes a question of state law,"[29] the record now before the Court does not permit such a determination. In consequence, there is no basis for rejecting the first of plaintiff's theories at this time.

Nor is there any present need to address the failure-to-train theory. As the both sides appear to recognize, knowledge of Pietropaolo's alleged activities on the part of policy making Village officials is indispensable to both *Monell* theories.[30] Knowledge coupled with inaction—the essence of the first of plaintiff's *Monell* theories—would suffice for recovery. In consequence, the failure-to-train theory is unnecessary and need not be passed upon.

### B. Punitive Damages

■ Plaintiff has conceded that she may not recover punitive damages against the Village on her Section 1983 claim.[31]

### Conclusion

Defendant Pietropaolo's motion to dismiss the complaint is denied in all respects. The motion of the Village of Hastings–on–Hudson to dismiss the complaint

---

(2d Cir.1986); *Krulik v. Board of Educ.*, 781 F.2d 15, 23 (2d Cir.1986).

**26.** *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)) (alterations in original).

**27.** This reference is far from clear. Hastings–on–Hudson is an incorporated village within the Town of Greenburgh, which is an entirely separate entity. If plaintiff intends to refer to a Greenburgh official, the reference is irrelevant because any indifference by such an official would have no bearing on the liability of the Village. Villages in New York State, on the other hand, do not have Town superintendents absent village-specific home rule legislation varying the provisions of Village Law.

**28.** Am. Cpt. ¶ 17.

**29.** *Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir.1998), *cert. denied*, 525 U.S. 1105, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999).

**30.** Pietropaolo's actions appear to have been quite unusual, and the Village of Hastings–on–Hudson is quite small. The complaint does not suggest that behavior such as that alleged here ever had occurred previously on the Hastings–on–Hudson police force. Nor is there any basis alleged for concluding that Village officials could have known that training of its police officers of the need to avoid harassing former lovers would have made actions such as those alleged less likely. In consequence, absent proof of knowledge by policy-making officials, the failure-to-train theory will fail.

**31.** *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

is granted to the extent that plaintiff's claim for punitive damages against the Village on the first claim for relief is dismissed and denied in all other respects.

SO ORDERED.